AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

_____ FILED _____ LODGED
_____ RECEIVED
09/17/2021
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.   3:21-mj-05192
Ford Truck, a F-250, White in color, Vehicle )
Identification Number 1FTNX21S0XEE16219, )
Washington State License Plate C99383B )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A Ford Truck, a F-250, further described in Attachment A, attached hereto and incorporated herein by reference.

located in the ____Western____ District of ____Washington____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(3) | Prohibited Possessor |
| 18 U.S.C. § 641 | Theft of Government Property |

✔ See Affidavit of Susannah Lustig, attached hereto and incorporatated herein by reference.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
Applicant's signature

Susannah Lustig, Special Agent, National Park Service, ISB
Printed name and title

☐ The foregoing affidavit was sworn to before me and signed in my presence, or
☑ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   09/17/2021                          _____
                                             Judge's signature

City and state:   Tacoma, Washington         Theresa L. Fricke, United States Magistrate Judge
                                             Printed name and title

USAO: 2021R00991

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Susannah Lustig, Special Agent, National Park Service Investigative Services Branch (ISB), being first duly sworn on oath, deposes and says:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Investigative Services Branch of the National Park Service. I have been stationed in the Pacific Field Office since January 2017. Prior to this position I was a uniformed U.S. Park Ranger with the National Park Service for seventeen years. I am a graduate of both the Land Management Basic Law Enforcement Program and Criminal Investigator Training Program at the Federal Law Enforcement Training Center at Glynco, GA. I have a Bachelor of Arts degree from Stanford University.

2. Part of my responsibilities as a Special Agent include investigations involving crimes of violence against intimate partners in National Parks. As a Special Agent, I have led and/or participated in investigations of a wide array of federal criminal violations including assaults, domestic violence, crimes against children, firearms violations, fraud, robberies, and homicide. During these investigations, I have participated in the execution of search warrants and the seizure of evidence of criminal activity.

3. My training includes courses in law enforcement techniques, federal criminal statutes, conducting complex criminal investigations, physical and electronic surveillance techniques, evidence collection techniques, and the execution of search warrants. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section, 2510(7), and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2243. I am classified and trained as a Federal Law Enforcement Officer with federal statutory arrest authority.

4. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

5. The facts set forth in this Affidavit occurred within the City of Port Angeles, Washington, and Olympic National Park. Olympic National Park is an area of federally owned public land administered by the National Park Service. Olympic National Park is an area of special maritime and territorial jurisdiction of the United States. Olympic National Park is located within the Western District of Washington.

6. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities will be found in the vehicle described in Attachment A in violation of the following laws of the United States:

a) Title 18 U.S. Code 922(g)(3): It shall be unlawful for any person to possess a firearm or ammunition who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

b) Title 21 U.S. Code § 844(a): It shall be unlawful for any person knowingly or intentionally to possess a controlled substance.

c) Title 18 U.S. Code § 1362: Whoever willfully or maliciously injures or destroys any of the works, property, or material of any radio, telegraph, telephone or cable, line, station, or system, or other means of communication, operated or controlled by the United States, or used or intended to be used for military or civil defense functions of the United States, whether constructed or in process of construction, or willfully or maliciously interferes in any way with the working or use of any such line, or system, or willfully or maliciously obstructs, hinders, or delays the transmission of any communication over any such line, or system, or attempts or conspires to do such an act.

d) Title 18 U.S. Code § 1855: Whoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other inflammable material upon the public domain or upon any lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United States,

e) Title 18 U.S. Code § 1853: Whoever unlawfully cuts, or wantonly injures or destroys any tree growing, standing, or being upon any land of the United States which, in

*pursuance of law, has been reserved or purchased by the United States for any public use.*

f) *Title 18 U.S. Code § 113(a)(4): Whoever, within the special maritime and territorial jurisdiction of the United States assaults by striking, beating, or wounding.*

g) *Title 18 U.S. Code § 226(a)(1): A person who travels in interstate or foreign commerce or enters or leaves Indian country or is present within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner.*

h) *Title 18 U.S. Code § 641: Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof.*

## ITEM TO BE SEARCHED

7.     This affidavit is made in support of an Application for a Search Warrant to search a Ford Truck, a F-250, White in color, Vehicle Identification Number 1FTNX21S0XEE16219, Washington State License Plate C99383B, that is currently located at the US Border Patrol Station, Blaine Sector, 110 Penn Street in Port Angeles, Washington, that was seized as evidence by National Park Service Special Agents on the evening of September 1, 2021 at the Blue Mountain Summit parking lot in Olympic National Park.

## FACTS IN SUPPORT OF PROBABLE CAUSE

8.     At about 2:00 AM on August 29, 2021, CALEB CHAPMAN (hereinafter, CHAPMAN) contacted R.H. at R.H.'s home and gave R.H. a handwritten note that discussed his grievances with the White House, his difficulty obtaining ammunition, and a pending "revolution" starting on the Olympic Peninsula and in Texas. At that time CHAPMAN was armed with an AR-15 rifle and a handgun that was concealed in his waistband.

9.     At about 4:30 AM, the Peninsula Emergency Communications Center (PENCOM) received a 911 telephone call reporting a wildfire burning in Olympic National Park, about one mile south of the intersection of the Hurricane Ridge Parkway and Mt. Angeles Road. The Clallam County Fire Department and US Park Ranger Dan Hall responded to this

wildfire and extinguished it. A Washington Department of Natural Resources wildland fire investigator responded to this fire and conducted the fire origin and cause investigation. Based upon the fire investigator's preliminary fire origin and cause investigation, any natural or accidental causes of this fire where excluded. He believed the fire was human caused and intentionally set.

10. Later that morning, PENCOM received a report from a National Park Service (NPS) employee that a tree had been cut down and was blocking Deer Park Road within the boundaries of Olympic National Park. Deer Park Road leads to Deer Park Campground and ends just below the summit of Blue Mountain. Park Rangers located one Douglas Fir tree that had been felled but had been moved to the road shoulder by an NPS Contractor, and a second Douglas Fir tree that had been cut as if it was intended to be felled but was still standing.

11. At about 10:09 AM, US Park Ranger Grego located a white Ford F-250 extended cab pick-up truck parked at the end of the Deer Park Road. This truck was displaying Washington license plate C99383B and was registered to Ryan Williams.

12. Ranger Grego contacted the adult female in the truck who was later identified as A.J. A.J. told Ranger Grego that she was CHAPMAN's girlfriend, and that CHAPMAN was armed with multiple firearms somewhere near them on Blue Mountain.

13. Rangers evacuated the Deer Park campground, trailheads, and road areas. For the next few hours, NPS Rangers, Port Angeles Police Officers, Clallam County Sheriff's Deputies and Federal Bureau of Investigations (FBI) Special Agents (SA) attempted to locate CHAPMAN using exigent cellular telephone location data (pings), and a police dog.

14. On August 29, 2021, A.J. was interviewed by law enforcement. A.J. said that CHAPMAN used methamphetamine and began acting erratically sometime after midnight on August 29, 2021. At approximately 2:00 a.m., after dropping his kids off with his brother, CHAPMAN and A.J. went to R.H.'s house to deliver the note CHAPMAN had written to R.H.

15. After speaking with R.H. and delivering his note to at least one other personal acquaintance, CHAPMAN and A.J. drove to the Deer Park campground in the Olympic National Park.[1]

---

[1] While at the Campground, a witness, D.R., interacted with A.J. and CHAPMAN. D.R. told investigators that it appeared as if A.J. was "strung out," indicating that she might be under the influence of drugs.

AFFIDAVIT OF SPECIAL AGENT LUSTIG  
USAO# MJ21-05185

4

16. On their way to the campground CHAPMAN stopped the truck and walked into the woods. Shortly thereafter A.J. saw embers from a fire near CHAPMAN's location. Upon his return to the truck, CHAPMAN smelled of gasoline.²

17. While traveling up Deer Park Road towards the campground, A.J. indicated CHAPMAN stopped the truck multiple times. A.J. observed CHAPMAN exit the truck and she heard a chainsaw being operated. It was dark and she was unsure of what he was doing. This activity described by A.J. is consistent with the location of the felled tree observed by NPS employees.

18. At approximately 6:00 a.m. on August 29, A.J. and CHAPMAN arrived at the Deer Park Campground area. According to A.J., CHAPMAN became increasingly upset. CHAPMAN told A.J. that she was going to die because of the "revolution." CHAPMAN told A.J. that he was never going to see his children again and that this was his "last day." A.J. stated that she was able to surreptitiously dial 911 from a cell phone during this time. A.J. did not indicate if the call was placed from A.J.'s phone or CHAPMAN's. CHAPMAN became aware of the phone call and grew enraged, telling A.J. that she didn't know what she had just done.

19. While arguing with A.J., CHAPMAN threw a full and unopened soup can at A.J., hitting her and causing a laceration to her leg. During the investigation, Ranger Grego observed a laceration on A.J.'s leg. A.J. reported that CHAPMAN then grabbed her by the head and hit her head, repeatedly, against the car seat while telling A.J. to "shut up." A.J. then observed CHAPMAN leave the truck and walk into the woods while yelling and screaming. A.J. stated that when CHAPMAN left, he was wearing a black colored tactical vest, a sleeveless shirt, jeans, and was armed with a semi-automatic rifle, a shotgun, and multiple handguns.

20. A.J. told agents that CHAPMAN had been talking about a "revolution" and he believes that there is going to be an armed conflict with the government. A.J. told investigators that she did not believe that CHAPMAN would harm the public but believed he will act violently towards law enforcement if he feels threatened. A.J. also believed that CHAPMAN has additional methamphetamine in his possession.

---

² While A.J. described the fire as being on the Deer Park Road, the fire is within the first mile on the Hurricane Ridge Parkway. It is believed A.J. incorrectly reported the name of the road where the wildfire occurred as Deer Park Road instead of Hurricane Ridge Parkway.

21. At about 3:00 PM, the Olympic National Park radio communications site (radio repeater) located at summit of Blue Mountain suddenly stopped functioning. This radio repeater is owned by the National Park Service. It is used by Olympic National Park for emergency response, public safety, and administrative radio communications.

22. On August 31, 2021, at approximately, 9:00 PM, CHAPMAN was located by an Unmanned Aircraft System (UAS), commonly referred to as a "drone." CHAPMAN was inside the Ford F-250 pick-up truck that was still parked at the Blue Mountain Summit parking lot. The UAS was remotely operated by law enforcement and was being used to perform a reconnaissance of the area. CHAPMAN fired at the UAS with a shotgun. The firearm used was a modified Remington, Model 870, pump-action shotgun with an overall length of less than 26 inches as the stock had been removed.

23. Law enforcement officers were ultimately able to contact CHAPMAN on his cell phone and were eventually able to negotiate his surrender. At about 9:51 PM on August 31st, CHAPMAN surrendered to FBI Agents and was placed under arrest.

24. The Remington 870 shotgun that CHAPMAN used to shoot at the drone was also seized as evidence. After CHAPMAN was arrested, NPS and FBI officers seized as evidence four semi-automatic pistols, two semi-automatic rifles and one 20-gauge pump action shotgun from areas adjacent to CHAPMAN's arrest and in other areas of the Park that were described by CHAPMAN. CHAPMAN indicated that he left them in the woods. These firearms were transferred to the Clallam County Sheriff's Office for evidence storage.

25. On September 1, 2021, NPS Special Agents searched the area around the Blue Mountain parking lot, which had been closed since the law enforcement incident began on August 29, 2021. An NPS Information Technology (IT) Specialist accompanied them.

26. The white Ford F-250 used by CHAPMAN was still parked in the parking lot. On the ground directly next to the driver's door, an Agent found one expended Federal brand 12-gauge shotgun shell and one unexpended Federal 12-gauge shotgun shell. Law enforcement officers observed two Stihl chainsaws and multiple boxes of ammunition in plain view in the white Ford F-250. The Ford F-250 was seized as evidence and towed to the United States Border Patrol Station in Port Angeles, Washington.

27. Agents then searched the Blue Mountain radio repeater site with the assistance of the NPS IT Specialist, who is a subject matter expert regarding NPS radio repeaters. They

determined that two lower screws on the fiberglass door of the repeater had been pried up from the door frame and the metal hasp on the door and door frame was missing its padlock.

28. When the IT Specialist examined the radio repeater electronical components, he noted that radio repeater power cable and the transmitting antenna cable had been removed from the radio repeater. The plastic ring on the power cable that screws into the radio repeater was broken and needed to be replaced in order to return the radio repeater into service.

29. NPS Agents searched the general area around the summit of Blue Mountain parking lot and found two caches of CHAPMAN's items that had been left on the Blue Mountain "rainshadow trail." At these locations, agents found several hundred live ammunition cartridges in various calibers and quantities, a loaded Smith & Wesson MP 9mm semi-automatic pistol, radio repeater electrical components, an Olympic National Park radio frequency list, a radio microphone, food and water, knives, general survival equipment, a brown leather journal with CHAPMAN's photograph on it, personal items and identification cards belonging to CHAPMAN, A.J., and other individuals, along with a baggie containing a white crystalline substance believed to be narcotics.

30. When performing records checks of the Smith & Wesson MP .40 caliber semi-automatic pistol, serial number HVN7197, that was seized in the area surrounding CHAPMAN at the time of his arrest, Port Angeles Police Sergeant Josh Powless determined this pistol was reported as stolen to the Port Angeles Police Department in 2017.

31. On the afternoon of September 3, 2021, NPS Assistant Special Agent in Charge (ASAC) Matthew Fisher and SA Tucker interviewed A.J. During this interview, in addition to other facts already discussed in this affidavit, A.J. reported the following information:

   a. A.J. reported that CHAPMAN is a habitual methamphetamine user. Over the past few months, CHAPMAN has been smoking increasing amounts of methamphetamine daily. He has stopped using methamphetamine multiple times, but always relapses and starts to use methamphetamine again. CHAPMAN refuses to seek substance abuse treatment for his methamphetamine addiction. He has a room dedicated in his home to use methamphetamine. CHAPMAN also consumes vodka or whiskey daily.

   b. A.J. reported at approximately 5:00 AM on August 28, 2021 she and CHAPMAN were at their home. CHAPMAN told her he was leaving to buy a hamburger. When he returned, CHAPMAN told her he had been at this brother's house and had smoked

methamphetamine. He told A.J. that there was a "revolution" starting and that they needed to leave their house immediately. CHAPMAN then instructed A.J. and his two juvenile children to pack supplies into the Ford F-250 and a trailer.

  c. He armed himself with multiple weapons to include pistols, a shotgun, and an AR-15 style rifle.

  d. CHAPMAN then drove to his brother's house and the group waited for several hours. During this time, A.J. indicated that she and the children were becoming afraid of CHAPMAN because of his erratic actions and rambling dialogue. After some time, CHAPMAN left his two juvenile children with his brother.

  e. A.J. recounted CHAPMAN driving at a high rate of speed through Port Angeles to a side street near Walmart lot where they parked. CHAPMAN utilized some type of electronic sensor over one of A.J.'s arms to locate a "tracking chip." CHAPMAN ordered A.J. to place tinfoil, "silver bars" and a dentist x-ray apron on her arm in order to block the chip's tracking signal. CHAPMAN told A.J. that she had a "tracking chip" in her arm and that he needed to remove it with a knife. CHAPMAN then grabbed one of A.J.'s arms and held a large knife close to her wrist. He then started to make motions with the knife as if he was going to cut her skin. A.J. was able to remove her arm from CHAPMAN's grasp and he did not cut her arm.

32. Immediately following the interview with A.J., SA Tucker observed A.J. to have a small laceration on her left shin. This laceration had begun to heal. SA Tucker photographed A.J. and this laceration.

33. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 18 U.S. Code 922(g)(3) is contained in the Ford. This is based upon investigators observing in plain view boxes of ammunition on the dashboard near the windshield, investigators seizing eight firearms from area near the Ford upon CHAPMAN's arrest, and investigators seizing a small plastic baggie that contained suspected narcotics from within items cached on the Rainshadow Trail.

34. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 21 U.S. Code § 844(a) is contained in the Ford. This is based upon Investigators seizing a small plastic baggie that contained suspected narcotics

from within the items cached on the Rainshadow Trail, A.J. reporting CHAPMAN to be a daily user of methamphetamine, and A.J. reporting he smoked methamphetamine on August 29th.

35. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 18 U.S. Code § 1362 and Title 18 U.S. Code § 641 is contained in the Ford. I based this belief upon investigators finding documents and electrical components owned by the NPS that are associated with the Blue Mountain radio repeater site within items CHAPMAN cached on the Rainshadow Trail.

36. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 18 U.S. Code § 32(a)(8) is contained in the Ford. I base this belief upon CHAPMAN firing a shotgun at the drone while he was inside of the cab of the Ford.

37. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 18 U.S. Code § 1855 is contained in the Ford. I base this belief upon A.J. reporting that CHAPMAN drove her in his truck to the location where the vegetation fire was located on the Hurricane Ridge Parkway Road, A.J. reporting CHAPMAN was kneeling on the road shoulder with the vegetation fire burning next to him within minutes of stopping in that location, and A.J. reporting that CHAPMAN smelled like gasoline when he returned.

38. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 18 U.S. Code § 1853 is contained in the Ford. I base this belief upon Investigators observing two Stihl chainsaws in plain view in the bed of the Ford.

39. Based up information provided in the Affidavit, I believe probable cause exists that evidence of CHAPMAN violating Title 18 U.S. Code § 113(a)(4) and Title 18 U.S. Code § 2261(a)(1). I base this belief upon A.J. reporting CHAPMAN threw a soup can at her, striking her leg while they were sitting in the cab of the Ford, A.J. reporting CHAPMAN made her wrap one of her arms in an X-ray vest and silver bars while they were sitting in the cab of the Ford, A.J. reporting CHAPMAN grabbed her by the head and slammed her head against the front passengers seat headrest, and A.J. reporting that she used a cellular telephone while sitting in the Ford to call 911.

## CONCLUSION

40. Based on the above facts, I believe there is probable cause for the issuance of a search warrant for the search of the Ford pick-up truck described in Attachment A and the seizure of items described in Attachment B. I respectfully request a search and seizure warrant be issued for the Ford described in Attachment A and the items described in Attachment B.

41. This warrant is being submitted via reliable electronic means under Fed. R. Crim. P. 4.1 & 41(d)(3).

*Susannah Lustig*
Susannah Lustig
Special Agent
National Park Service

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on this 17th day of September, 2021.

*Theresa L. Fricke*
THERESA L. FRICKE
UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT OF SPECIAL AGENT LUSTIG        10
USAO# MJ21-05185

# ATTACHMENT A
# ITEMS TO BE SEARCHED

1. Ford Truck, F-250, White in color, Vehicle Identification Number 1FTNX21S0XEE16219, Washington State License Plate C99383B Located at the US Border Patrol Station, Blaine Sector, 110 Penn Street, Port Angeles, Washington.





Attachment A: Items to be searched

# ATTACHMENT B
# ITEMS TO BE SEIZED

1. The following evidence that constitutes evidence, fruits and instrumentalities of violations of 18 USC § 22(g)(3)-Prohibited Possessor, 18 USC § 641-Theft, 21 USC § 844 (a)-Simple Possession, 18 USC § 1362-Communications Lines, Stations or Systems, 18 USC § 32-Destruction of Aircraft, 18 USC § 1855-Timber Set a Fire, 18 USC § 113(a)(4)-Assault by Striking, Beating or Wounding, 18 USC §2261(a)(1)-Interstate Domestic Violence, 18 USC § 1853-Trees Cut or Injured and involve CALEB JESSE CHAPMAN, to include:

- Firearms and destructive devices, associated parts, accessories
- Ammunition and associated components
- Controlled substances and paraphernalia associated with illicit drug use
- Chainsaw(s) and associated fuel containers, tools, accessories
- Incendiary devices and accelerants used for igniting and sustaining fire
- Documents, notes, maps, papers indicating intentions to occupy or control federal property in violation of federal law
- Physical evidence related to the assault of A.J. to include a soup can which was used to injure A.J.
- Radio components, parts, documents associated with the NPS Communications Site (Radio Repeater)
- Government property
- Tools used to cut, pry or otherwise access the locked repeater site
- Electronic devices, to include, cellular phones, tablets, global positioning system (GPS) capable devices, radio communication devices, digital image capture devices (camera)
- X-ray shielding vest used at medical facilities

Attachment B: Items to be seized